IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **MELVIN STAMPER,** | ) | **8:14CV415** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **CORRECT CARE SOLUTIONS,** | ) | |
| (Health Care Provider for Tecumseh | ) | |
| Correctional Facility), **BRYAN WEST** | ) | |
| **MEDICAL FACILITY,** and **NEBRASKA** | ) | |
| **DEPARTMENT OF CORRECTIONS,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Melvin Stamper filed his Complaint (Filing No. 1) in this matter on December 22, 2014. This court has given Stamper leave to proceed in forma pauperis. (Filing No. 6.) The court now conducts an initial review of Stamper's Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. SUMMARY OF COMPLAINT

Stamper is currently incarcerated at the Sterling Correctional Center in Sterling, Colorado. (Filing No. 1 at CM/ECF p. 2.) His claims are based on incidents that occurred while he was incarcerated at the Tecumseh State Correctional Institution ("TSCI") in Tecumseh, Nebraska. Liberally construed, he asserts state-law medial negligence claims and also Eighth Amendment claims brought pursuant to 42 U.S.C. § 1983. He sued Correct Care Solutions, the entity that provides healthcare services within the TSCI. (*Id.* at CM/ECF p. 1.) He also sued the Nebraska Department of Correctional Services ("NDCS") and Bryan West Medical Facility ("Bryan West"). (*Id.*)

Stamper alleged he was housed in the segregation unit at the TSCI. He began to feel sick in December of 2013 after contracting the H1N1 flu virus. (*Id.* at CM/ECF p. 3.) Initially, he informed guards and nurses that he was "feeling unwell and needed some medical attention." (*Id.*) They told him to lie down and drink plenty of fluids. Later, he informed "whoever would listen to [him]" that he was really sick and getting worse. (*Id.*) He was, again, instructed to "drink plenty of fluids, and to get plenty of rest." (*Id.*)

On January 12, 2014, Stamper momentarily passed out and was "rushed to the infirmary." (*Id.*) The nurse called the on-call doctor who informed the nurse to "immediately put [Stamper] on oxygen and to call the ambulance to transport [him] to the nearest hospital." (*Id.*) Prison officials transported Stamper to a hospital in Tecumseh, Nebraska, where the doctor diagnosed him with the flu and possibly pneumonia. (*Id.* at CM/ECF p. 9.) The doctor recommended that prison officials transport Stamper to Bryan West in Lincoln, Nebraska, which they did. (*Id.*)

At Bryan West, Stamper was diagnosed with bilateral pneumonia. Stamper underwent a tracheotomy operation during which his lungs collapsed, he temporarily died, and had to be revived. (*Id.* at CM/ECF p. 9.) Stamper then went into a coma for 40 days, but states he does not "know if it was medically induced or not." (*Id.*) Stamper complains that his family was not informed that he was in the hospital until, at some point, hospital staff called Stamper's father to ask "what to do with [Stamper's] body in the event [Stamper] die[d]." (*Id.*)

Stamper awoke from his coma in March of 2014 and remained in the hospital for an additional four months. At some point thereafter, Stamper entered the custody of the

Colorado Department of Corrections. While in the custody of the Colorado Department of Corrections, Stamper received a CT scan and was diagnosed with interstitial lung disease. (*Id.*)

Stamper's primary complaints appear to be that prison officials failed to give him a flu shot and, once he contracted the flu, they did not give proper him medical attention. The lack of medical attention "caused Plaintiff's flu to turn into bi-lateral pneumonia, and eventually turn into interstitial lung disease." (Filing No. 1 at CM/ECF p. 4.) Stamper also complains that staff at Bryan West failed to diagnose his interstitial lung disease. (*Id.*)

For relief in this matter, Stamper seeks damages in the amount of $2 million, as well as payment of all future medical costs and any legal costs associated with this action. (*Id.* at CM/ECF p. 8.)

## II. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556

3

U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION OF CLAIMS

For the reasons discussed below, Stamper's Complaint may not proceed to service of process against any of the named defendants. On the court's own motion, Stamper will have an opportunity to file an amended complaint.

**A.    NDCS**

Stamper is suing the NDCS for money damages. The NDCS is an agency of the State of Nebraska. "The Eleventh Amendment establishes a general prohibition of suits in federal court by a citizen of a state against his state or an officer or agency of that state." *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). There are limited exceptions to the Eleventh Amendment bar on suits against states and state officials (in their official capacities), *see, e.g., Ex Parte Young*, 209 U.S. 123 (1908), but none of those exceptions apply here where Stamper has plainly sued a state agency for money damages. Stamper's claims for monetary relief against the NDCS are barred by the Eleventh Amendment.

The Eleventh Amendment does not prevent plaintiffs from bringing suits for money damages against state officials provided that the defendants are sued in their individual capacities. Stamper did not name any state officials as Defendants in this matter.

**B.    Correct Care Solutions**

It is unclear what claims Stamper intended to raise against Correct Care Solutions. His allegations set forth that, as soon as the doctor and nurse at the prison became aware of the severity of Stamper's condition, they gave him oxygen and directed prison officials to transport him to the hospital. (Filing No. 1 at CM/ECF p. 3.) Stamper did not allege they ignored his condition or acted with deliberate indifference to his medical needs. In other words, Stamper's allegations concerning Correct Care Solutions' staff do not appear to implicate the Eighth Amendment's prohibition on cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (reiterating that, in order to state a cognizable claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently

5

harmful to evidence a deliberate indifference to serious medical needs."). Stamper alleged he informed nurses that he felt "unwell" at the outset of his illness, but his allegations do not suggest he had a serious medical need at that time.

While Plaintiff alleged that he did not receive a flu shot (Filing No. 1 at CM/ECF p. 4), he did not allege any Defendant was involved in this omission of care or that any member of the prison or medical staff actually knew of but deliberately disregarded a serious medical need. See Allard v. Baldwin, 779 F.3d 768, 771 (8th Cir. 2015) ("An Eighth Amendment claim that prison officials were deliberately indifferent to the medical needs of inmates involves both an objective and a subjective component. The plaintiffs must demonstrate (1) that they suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.") (internal quotation marks and citation omitted). To the extent Stamper's claim is based on an assertion that prison staff were negligent in failing to administer a flu shot, he cannot state a claim for relief under § 1983. Negligence in diagnosing or treating a medical condition does not give rise to a claim under the Eighth Amendment. Estelle, 429 U.S. at 106.

Separately, a defendant may not be held liable under 42 U.S.C. § 1983 based strictly on a theory of respondeat superior. See Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690-91 (1978). This is so even when a plaintiff names a private entity, acting under color of state law, as a defendant in a § 1983 case. See Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-976 (8th Cir. 1993).

**C.     Bryan West**

6

A defendant must act under color of state law to be held liable for constitutional violations under 42 U.S.C. § 1983.  Stamper alleged in his Complaint that Bryan West "is the contracting medical facility" for the TSCI.  (Filing No. 1 at CM/ECF p. 2.)  Even assuming, without deciding, that Bryan West is a state actor, Stamper's claims against Bryan West nonetheless fail as a matter of law.  Plaintiff's allegations do not plausibly suggest that Bryan West or its staff were deliberately indifferent to Stamper's medical needs.  Indeed, Stamper alleged medical staff diagnosed him with pneumonia, performed a tracheotomy "so that [h]e could breath[e] easier," revived him after he "temporarily died," cared for him for 40 days while he was in a coma, and then treated him for an additional four months.  (Filing No. 1 at CM/ECF p. 9.)  To the extent Stamper's claim is based on an assertion that hospital staff were negligent in failing to diagnose him with interstitial lung disease, he cannot state a claim for relief under § 1983.  Negligence in diagnosing or treating a medical condition does not give rise to a claim under the Eighth Amendment. *Estelle*, 429 U.S. at 106.

IT IS THEREFORE ORDERED that:

1. For the reasons discussed above, Stamper's Complaint may not proceed to service of process against any of the named defendants.  Stamper will have 30 days in which to file an amended complaint in this matter.  Failure to file an amended complaint will result in dismissal of this matter for failure to state a claim upon which relief may be granted.

2. The clerk of the court is directed to set the following pro se case management deadline: May 18, 2015: check for amended complaint.

3.  The court makes no finding at this time with respect to any supplemental jurisdiction it may have over state-law claims raised in the Complaint.

DATED this 15th day of April, 2015.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge